# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 2389 | **DATE** | 12/20/2000 |
| **CASE TITLE** | Evelyn L. Houston vs. Provident Life and Accident Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 1/11/01 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [92] is denied. A status hearing is set for 1/11/00 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | 12/21/00 | |
| ✓ | Docketing to mail notices. | date docketed | **108** |
| | Mail AO 450 form. | C.S. | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |

RJ courtroom deputy's initials

FILED FOR DOCKETING
00 DEC 21 AM 8: 30

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

**DEC 2 1 2000**

EVELYN HOUSTON, )
                   Plaintiff, )
        v. )       No. 95 C 2389
                       )
PROVIDENT LIFE AND ACCIDENT )    Judge Joan B. Gottschall
INSURANCE COMPANY, )
                       )
                 Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Evelyn Houston injured her back while employed as a legal secretary at the law firm of Sidley & Austin. Houston submitted a claim for long term disability benefits under Sidley & Austin's long term disability insurance policy, which was issued by defendant Provident Life and Accident Insurance Company. Houston's claim for benefits was approved on March 30, 1994, and she subsequently began receiving disability benefits payments. On January 6, 1995, Provident advised Houston that, upon reviewing the medical information contained in Houston's claim file, Provident had determined that she was no longer disabled under the policy, and that her benefits would be terminated. Houston appealed this determination under the procedures provided by the policy, but was ultimately unsuccessful. Houston brought the present action challenging the termination of her benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. Her amended complaint alleges violations of 29 U.S.C. §§ 1133, 1140, 1141, and 1144. This court has jurisdiction pursuant to 28 U.S.C. 1331, because the action arises under the laws of the United States. Defendant Provident has moved for summary judgment. For the reasons set forth below, defendant's motion is denied.

109

## Background

Evelyn Houston began working as a legal secretary for the law firm of Sidley & Austin in 1990. Houston was injured lifting heavy boxes at work in December, 1992 and again in June, 1993. Houston submitted a claim for long term disability benefits on December 28, 1993. The claim was filed pursuant to Sidley & Austin's "Group Long Term Disability Insurance Policy," issued by defendant Provident. Under the express terms of the policy, Provident has "full, exclusive, and discretionary authority to control, manage, and administer claims, and to interpret and resolve all questions arising out of the administration, interpretation, and application of [the] Policy," except to the extent that those functions are reserved for Sidley & Austin by the policy. (Policy, p. 25). In order to receive benefits under the policy, a claimant is required to provide "Proof of Loss." The policy defines "Proof of Loss" as "written evidence satisfactory to [Provident] that Covered Persons are Disabled and entitled to LTD Monthly Benefits." (Policy, p. 22).

The definition of disabled under the policy is as follows: An employee is disabled from her own occupation if she is 1) unable to earn at least 80% of her indexed earnings, or 2) unable to perform each of the material duties of the occupation that she regularly performs for her employer. An employee is disabled from any occupation if she is 1) unable to earn at least 80% of indexed earnings while working in any occupation, or 2) unable to perform each of the material duties of any occupation for which she is reasonably fitted by education, training or experience. (*See* Policy, pp. 6, 10).[1]

---

[1] The parties generally agree as to the duties of a legal secretary, except that Houston contends that her job required her to lift 25 pounds, which Provident denies. As support for her contention, Houston cites document PLACL 00092, which is a letter from a doctor who

At the time Houston filed her claim she was being treated by Dr. Mahendra Patel, a family practice physician. In support of Houston's initial claim Dr. Patel submitted an Attending Physician's Statement of Disability form ("APS") dated December 28, 1993. In the APS, Dr. Patel stated that Houston was disabled for her regular occupation due to a cervical disc injury, and that the date on which Houston could return to work was "indefinite." (Exh. E, PLACL 00073-74). Upon request by Provident, Dr. Patel sent Provident additional medical records regarding Houston's treatment and care. Those records indicated that Dr. Patel had diagnosed Houston with a cervical disc syndrome caused by work injuries. (Exh. E, PLACL 00075). On March 30, 1994, Provident approved Houston's claim for long term disability benefits.

After approving the claim, Provident performed a rehabilitation review of Houston's claim. Provident claims that it sent information regarding Provident's rehabilitation program to Houston in April, 1994 and that it sent rehabilitation surveys to Houston twice in October, 1994. Houston admits to receiving a survey in October, but only after she had requested it. She denies receiving any rehabilitation information prior to her request. Houston eventually completed a rehabilitation survey and returned it to Provident in November, 1994. (Exh. E, PLACL 00007-

---

examined her. The letter does not, in any way, support Houston's contention. However, upon review of the record, the court does find that a Sidley & Austin Job Description form supports Houston's contention. (Exh. E, PLACL 00029-31). It appears as though plaintiff's counsel inadvertently transposed the "2" and the "9" in the document number. That job description form lists certain physical demands that "must be met by an employee to successfully perform the essential functions of this job." (*Id.*). Included among the physical demands is that "[t]he employee must occasionally lift and/or move up to 25 pounds." (*Id.*). Although other documents pertaining to Houston's duties do not mention this lifting requirement, on a motion for summary judgment the court must view the record in the light most favorable to the non-moving party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). Thus, the court will assume for purposes of this motion that Houston's job did require her to lift or move up to 25 pounds on occasion.

3

11).

In June, 1994, Sidley & Austin sent Provident a medical report from Dr. James W. Ryan regarding Houston that was prepared in connection with a workers' compensation claim filed by Houston. In the report, dated July 20, 1993, Dr. Ryan stated that upon his examination of Houston and her records, he was of the opinion that she could "return to the work she was doing without limitations." (Exh. E, PLACL 00066). Houston contends that Dr. Ryan's review of her records was incomplete, because Dr. Ryan failed to review an MRI report[2] dated August 2, 1993.[3]

Upon reviewing Houston's claim file, including Dr. Ryan's report, Provident exercised its right under the policy to have Houston submit to an independent medical examination. Provident

---

[2] Defendant objects to Houston's reliance on the MRI report, and moves to strike references to the MRI because the report was not furnished to defendant in discovery. The court declines to strike the references to the MRI because defendant has not adequately shown that the MRI report should have been produced pursuant to a specific discovery request, nor that Houston violated any discovery rules by not producing the MRI. In addition, striking all references to the MRI would be unduly harsh where, as here, the MRI plays a crucial role in establishing a genuine issue of material fact to overcome summary judgment. *See St. Francis Hospital of Evanston v. DeFever*, No. 94 C 4235, 1995 WL 533285, at *2 (N.D. Ill. Sep. 6, 1995).

[3] In Plaintiff's Answer to Defendant's Statement of Uncontested Facts, she apparently denies that Dr. Ryan ever conducted a physical examination of her. (Pl.'s Answ. to St. of Facts, p. 8). However, in her own Statement of Uncontested Facts, Houston states that Dr. Ryan did perform a physical examination, but that he failed to examine the MRI report. (Pl.'s St. of Facts, p. 2-3). Further, the only evidence that Houston cites regarding this fact is Dr. Ryan's report and Houston's own unsigned, unsworn "affidavit." Dr. Ryan's report clearly indicates that he physically examined Houston, and Houston's "affidavit" does not contain a statement contradicting this. In any event, the court will not consider on a motion for summary judgment affidavits that have not been sworn before an officer authorized to administer an oath (such as a notary public), nor made under penalty of perjury. *See* Fed. R. Civ. P. 56(e); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990). Therefore, the court will deem it admitted that Dr. Ryan physically examined Houston.

4

retained an independent company to schedule the examination in order to assure impartiality.

Houston was examined by Dr. Churl Soo Suk on September 1, 1994. Dr. Suk generated a report

dated September 16, 1994 and forwarded the report to Provident. In the report, Dr. Suk referred

to the MRI examination and concluded that Houston was "having problems of the neck condition

for some time" and that "further evaluation and care by the neurosurgeon for the cervical spine is

needed." (Exh. E, PLACL 00099-00101). Provident requested clarification of Dr. Suk's report,

and specifically focused his attention on four questions. The four questions, and Dr. Suk's

answers to them, are as follows:

> 1. Define this claimant's current diagnosis, recommend treatment program and prognosis.
> A: Diagnosis: Suspected herniated nucleus pulposus between C5 & 6 and mild degenerative changes between C5 & 6.
>
> 2. In your opinion, may this person return to his/her regular occupation at this time? If currently disabled from his/her occupation, please indicate when he/she might be able to return to that type of work.
> A: No. The patient should be further evaluated by a neurosurgeon.
>
> 3. May this person return to some other type of work at this time? If currently unable to return to any type of work, please indicate when he/she might be able to do so and describe the objective findings that support total disability.
> A: No.
>
> 4. Complete the attached physical capacities form.
>
> (*See* Exh. E, PLACL 00096-97).

In response to question 4, Dr. Suk submitted a physical capacities form indicating that

Houston had the following restrictions on her activities: 1) she could only lift or carry 10 pounds

occasionally, 2) she could not push or pull with her hands, 3) she could only occasionally bend,

squat, kneel, or balance, and could frequently use foot control, and 4) she could only occasionally

be exposed to cold or heat. The physical capacities form placed no other restrictions on Houston's activities. Dr. Suk indicated on the form that Houston would only be able to return to work "pending neurological evaluation." (Exh. E, PLACL 00095).

On or about October 13, 1994, Provident's medical advisor reviewed Houston's claim file and concluded that Houston was not totally disabled. Provident then sought the records of Houston's treating neurosurgeon, referred to in Dr. Suk's report. Despite sending two requests to the neurosurgeon, Provident never received the neurosurgeon's records. On December 6, 1994, Provident sent a letter to Houston, requesting that she and her physician complete a form to update Houston's claim. In addition, Provident retained the firm of Ellis & Associates in order to discuss rehabilitation efforts with Houston. Ellis & Associates reported to Provident that Houston had refused to cooperate with them in attempting to proceed with rehabilitation. Houston asserts that she refused meeting with Ellis & Associates representatives because she was not authorized by Provident to see Ellis & Associates for vocation rehabilitation counseling, because she was asked to pay for the rehabilitation services, and because she had been sexually assaulted and lived alone, making her reluctant to meet with a representative in her home.

Provident again reviewed Houston's claim file in December, 1994 and concluded that her long term disability benefits should be terminated. Provident notified her of this decision by a letter dated January 5, 1995. The letter stated that the decision was based on a review of "all the medical information contained in [Houston's] LTD file," including the physical capacity findings, which indicated that she was able to perform her own job as legal secretary and also many other sedentary jobs. (Exh. E, PLACL 00164). The letter also advised her of her right, under ERISA and the terms of the policy, to appeal the decision within 60 days.

6

In January, 1995, Houston submitted to Provident a letter and a Proof of Continuance of Disability form completed by herself and Dr. Patel. Dr. Patel indicated that, as of January 25, 1995, Houston was still disabled due to the cervical disc injury. He further indicated that her work capacity was "as before." (Exh. E, PLACL 00081-83). Houston also indicated in the letter that she had an eye condition that had reached "a chronic stage." (Exh. E, PLACL 00083). On February 7, 1995, an ERISA initial appeal review was performed and Provident's termination of Houston's benefits was upheld. In March, 1995, Houston submitted an appeal and enclosed additional medical records generated by Dr. Patel and other doctors, including Dr. I. Hildebrandt, Dr. J. Edgar Allen, and D. Lynn Zamick, Psy.D. These additional records indicated that Houston was suffering from eye spasms and psychological problems, including depression. (Exh. E, PLACL 00102-17). After reviewing the additional records relating to the eye and psychological problems, Provident concluded that vision and depression problems would not prevent Houston from performing her job. On March 28, 1995, a second ERISA review was held, which included a review of the additional medical records submitted by Houston. The decision to terminate benefits was again upheld, and Houston was notified of the result. Houston then filed the present action.

## Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to

the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Although the amended complaint alleges violations of 29 U.S.C. §§ 1133, 1140, 1141, and 1144, both parties have proceeded as though Houston's claim arises under § 1132. That section allows a participant or beneficiary of an ERISA plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Since the § 1132 issue has been raised "by express or implied consent of the parties," the court will treat the complaint as constructively amended by the parties to add a claim under § 1132. *See* Fed. R. Civ. P. 15(b); *Walton v. Jennings Community Hospital, Inc.*, 875 F.2d 1317, 1320, n.3 (7th Cir. 1989). Moreover, this opinion addresses *only* the § 1132 issue, because that is the only issue raised in the briefs submitted by the parties. To the extent that plaintiff's amended complaint raises claims based on other ERISA provisions, those claims are not affected by this order.

The first step in an ERISA claim under § 1132 is to determine the appropriate standard of review that the court should employ in evaluating the denial or termination of benefits. The U.S. Supreme Court has stated "that a denial of benefits challenged under § 1132(a)(1)(B) is to be

8

reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan does confer such discretion on the administrator or fiduciary, then the court will employ the more deferential "arbitrary and capricious" standard. *See Wilczynski v. Kemper Nat'l Ins. Cos.*, 178 F.3d 933, 934 (7th Cir. 1999). In this case, both parties agree that the plan grants discretion to Provident, and that the "arbitrary and capricious" standard applies. (Def.'s Memo. in Supp. of Summ. J. at 2-4; Pl.'s Brief in Oppos. to Summ. J. at 1).

Under the "arbitrary and capricious" standard, the court will reverse Provident's decision only if it was "downright unreasonable." *See Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994). If the decision to terminate was essentially based on a permissible choice between the differing opinions of multiple medical experts, then the termination was not unreasonable. *See id.; Allison v. Dugan*, 951 F.2d 828, 833 (7th Cir. 1992). Nevertheless, the "arbitrary and capricious" standard is not simply a rubber-stamp of approval. *See Donato*, 19 F.3d at 380. Where, as here, the plan administrator or fiduciary rejects the findings of the claimant's treating physician, the court must examine "whether the administrators have provided a rational justification for their decision." *See Johnson v. Ameritech Sickness and Accid. Disability Benefit Plan*, No. 97 C 0990, 1999 WL 199637, at *7 (N.D. Ill. Apr. 5, 1999).

After fully reviewing the record, the court finds that there is a genuine issue of fact as to whether Provident's decision to terminate Houston's benefits was reasonable. Provident claims that the decision was based on Dr. Ryan's report, Dr. Suk's physical capacities report, and Houston's refusal to participate in rehabilitation. Houston challenges Provident's first

justification by arguing that reliance on Dr. Ryan's report would be unreasonable, because Dr. Ryan did not review the August, 1993 MRI examination report. Indeed, Dr. Ryan's report was completed in July of 1993, before Houston underwent the MRI exam. Provident responds by pointing out that the MRI report was not included in Provident's claim file and was not produced in discovery. The court is concerned that Houston's failure to produce the MRI report might have been a discovery violation. As noted above, however, striking all reference to the MRI would be an unduly harsh remedy where the MRI creates a genuine issue of material fact sufficient to overcome summary judgment. *See St. Francis Hospital*, 1995 WL 533285, at *2. Moreover, it is not the MRI report itself, but rather Provident's knowledge that there was an MRI exam subsequent to Dr. Ryan's report, that is in issue. Although Provident did not have the MRI report in its file when making the decision, it is clear from the record that Provident knew or should have known that such an exam took place. In Dr. Suk's letter dated September 16, 1994, he noted that Houston's problem "was diagnosed as herniated nucleus pulposus between C5 and C6 by MRI examination . . . ." (Exh. E, PLACL 00099-00100). In addition, Dr. Ryan's report specifically noted that Houston's physician wanted to order an MRI. (Exh. E, PLACL 00067). Despite this knowledge of the MRI exam, Provident did not seek to obtain the MRI report. Instead, Provident chose to rely on Dr. Ryan's pre-MRI report, even in the face of post-MRI reports from other physicians recommending that Houston not return to work. In light of these circumstances, Provident's reliance on Dr. Ryan's report might well have been unreasonable.

Provident's second asserted basis for termination is the physical capacities form submitted by Dr. Suk. Although Dr. Suk recommended that Houston not return to work, pending further evaluation and care from the neurosurgeon, he indicated few restrictions on Houston's

physical activities on the physical capacities form. Provident asserts that its review of the restrictions on that form led it to conclude that Houston could return to work, notwithstanding Dr. Suk's recommendation. However, as discussed above, it is disputed whether or not Houston's job as secretary required her to lift 25 pounds occasionally. When viewing the record in the light most favorable to Houston, the court finds that lifting 25 pounds was one of Houston's job requirements. (Exh. E, PLACL 00029-31). Furthermore, there is no dispute that Provident had Sidley & Austin's Job Description Form in its file when making the decision to terminate Houston's benefits. (*See id.*). Yet Dr. Suk's physical capacities form clearly indicates that Houston was restricted to lifting a maximum of 10 pounds occasionally. (Exh. E, PLACL 00095). Thus, Provident's reliance on the physical capacities form may have been unreasonable. This is especially true given Dr. Suk's own conclusion that Houston was not ready to return to work. (Exh. E, PLACL 00095-96).

Finally, Provident points to evidence suggesting that Houston refused rehabilitation services. Under the express terms of Section IV of the policy, benefits will automatically be terminated when the claimant "refuse[s] to cooperate or to participate in a program of rehabilitation approved by [Provident]." (Policy, p. 13). Although there is some evidence in the record to suggest that Provident was concerned about Houston's apparent reluctance to proceed with rehabilitation, the court is unconvinced that this concern was a rational justification for the termination of benefits. Most telling is the observation that none of the letters Provident sent to Houston explaining the termination of benefits or the rejection of her appeals even mention a refusal to cooperate in a rehabilitation program. Rather, the letters explain Provident's decision by stating that Houston was not totally disabled under the policy. The letters support this

11

conclusion by referring to the medical records, and in one instance by specifically pointing to the physical capacities form. (Exh. E, PLACL 00163-64, 00167-69). Nowhere in any of the letters to Houston does Provident refer to rehabilitation programs or the termination provision in Section IV of the policy. Furthermore, the record shows that on or before January 5, 1995, Houston offered Provident reasons for rejecting home visits from rehabilitation counselors. (Exh. E, PLACL 00020). There is no indication in the record that Provident considered these reasons before rejecting her subsequent appeals. Thus, there is at least a genuine issue of fact as to whether Provident relied on Houston's rejection of rehabilitation programs to terminate her benefits; and if they did, whether such reliance was reasonable.

### Conclusion

The court finds a genuine issue of material fact as to whether the reasons given by Provident for terminating Houston's benefit were reasonable. Thus, even under the "arbitrary and capricious" standard of review, the court is unwilling to grant summary judgment for defendant on Houston's § 1132 claim. Defendant's motion for summary judgment is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 20, 2000